IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ERIKA ORMOND                                                                           PLAINTIFF

vs.                                                                  Civil Action No. 3:03-cv-127 WS

JO ANNE BARNHART, COMMISSIONER
OF SOCIAL SECURITY                                                                    DEFENDANT

### ORDER

Before the court is the Report and Recommendation of the United States Magistrate Judge in the above styled and numbered cause pertaining to the denial of the plaintiff's application for disability benefits by the Social Security Administration. Title 42 U.S.C. § 405 authorizes United States district courts to conduct judicial review of the final decisions of the Commissioner of Social Security concerning applications for Social Security benefits. This judicial review is limited. The court's role is to determine: whether (a) the Commissioner applied proper legal standards; and (b) the decision is supported by substantial evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). If proper principles of law were applied, and if the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In the instant case, the Magistrate Judge recommends that this case be remanded to the Administrative Law Judge (hereinafter the "ALJ") for the United States Office of

Hearings and Appeals for consideration of whether the plaintiff might have a mental impairment sufficiently severe enough to render her disabled and eligible for benefits. The Magistrate Judge provides this recommendation based upon section DI 24515.056(D)(2) of the Program Operations Manual System (POMS), the section which addresses medical equivalency in mental retardation cases.

This court has reviewed the Magistrate Judge's reasons for his conclusion, but is not persuaded.  For the reasons stated below, this court shall not adopt the Magistrate Judge's Report and Recommendation, and, instead, shall uphold the decision of the ALJ.

### **THE EVIDENCE**

A significant portion of the evidence presented to the ALJ on which the plaintiff relied was a comprehensive individual assessment conducted by the Forest, Mississippi School System and Hawkins Middle School.  In March and April of 2000, when the plaintiff was 14 years of age, the above entities conducted a comprehensive individual assessment in order to determine whether the plaintiff was qualified for special education. An assessment team, made up of the school's nurse, a psychologist and the plaintiff's teachers, concluded that the plaintiff exhibited average intelligence with regard to verbal skills and borderline intelligence with regard to performance skills (such as math).  The assessment team concluded that the plaintiff was functioning at the appropriate age level in the areas of communication, motor/physical, personal and social.  The team found, however, the plaintiff was functioning below the appropriate age level for concentration, persistence and pace, particularly in the area of math.

The school nurse and the school psychologist administered the plaintiff's physical examination, finding no problems with the plaintiff's visual or auditory acuity.  Their

assessment noted the plaintiff's excessive weight and her diabetes diagnosis, but found no other physical problems. They based their findings on medical records from the University of Mississippi Medical Center and East Central Mississippi Health Care.

Next, the Wechsler Intelligence Scale for Children-III was administered to the plaintiff by the school's psychologist. The plaintiff achieved a verbal IQ score of 92, a performance IQ score of 71, and a full scale IQ score of 80. The psychologist noted that the chances the plaintiff's scores between 75 and 86 represented her true IQ were about 95 out of 100 and, therefore, valid. He found the plaintiff's performance IQ score to be 1.93 standard deviations below the mean of the normative group. Thus, the psychologist concluded that the plaintiff met the criteria for special education assistance in math calculation and reasoning.

The assessment team as a whole concluded that the plaintiff met the eligibility criteria for math calculation and reasoning, and plaintiff was assigned to special education for assistance in math. An assessment team follow-up report dated November 20, 2000, stated that the plaintiff was spending approximately twenty-five hours per week in the special education setting for her learning disability in math calculation and reasoning. The report also stated that the plaintiff had difficulty learning new materials and was unable to complete her assigned math tasks in a timely manner.

Meanwhile, in September of 2000, the plaintiff applied for disability benefits through the Mississippi Disability Determination Services (DDS), an agency funded entirely through the Social Security Administration (SSA) which makes disability determinations for Mississippi citizens who apply for Social Security Disability Insurance

or, as in this case, Supplemental Security Income (SSI).   The plaintiff's mother contended that her daughter was disabled by her diabetes and sought SSI benefits.

The plaintiff's DDS application was reviewed by several experts, including James D. Herzog, Ph.D., a clinical psychologist.  The plaintiff's Disability Determination and Transmittal dated December 5, 2000, concluded that the plaintiff had a learning disorder and was obese, but these findings did not support a finding of disability.  The plaintiff immediately sought review and a second determination based on the added physical ailments of headaches and loose stools.  A second Disability Determination and Transmittal dated March 6, 2001, found that the plaintiff's obesity was caused by hyperalimentation, and that she had an anxiety disorder.  Nevertheless, this review affirmed the prior determination denying the plaintiff's claim for SSI benefits.

The clinical psychologist for DDS, Dr. Herzog, entered his findings on the Childhood Disability Evaluation Form under section D, Areas of Development or Functioning (page 95 of the record).  The four categories of the form evaluated by Herzog were Cognitive/Communicative;  Social;  Personal;  and Concentration, Persistence, or Pace.  Herzog found no limitations in the plaintiff's function under Social, Personal, and Concentration, Persistence, or Pace.  Herzog found the plaintiff's cognitive ability to be limited, but this limitation was "less than marked."  Herzog's evaluation was guided by sections DI 25216.001(B)(2) and 25216.005 of the Program Operations Manual System (POMS), which explains procedures to be followed when reviewing applications for disability benefits at the DDS level.  The form explains at footnotes 1 and 2 that a "marked" limitation is one which interferes seriously with a child's functioning, while an "extreme" limitation is one that prevents meaningful functioning.  The conclusions

recorded by Herzog show that the plaintiff was not markedly or extremely limited in any of the areas evaluated. The most significant entry for the purposes of the Report and Recommendation now before this court is recorded by Herzog in response to the form's inquiry about mental retardation. The inquiry states that: "Based on your findings in the relevant areas of Development and Functioning, is the physical impairment(s) or combination of physical and mental impairments equivalent in severity to ... Listing 112.02B.2 (children age 3 to attainment of age 18)?" Herzog checked "no" on the form.

The reference to "Listing 112.02B.2" in the inquiry is Regulation 20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.02B.2, which lists mental disorders and impairments which would qualify a child claimant for SSI benefits if the child's impairment at least was medically equivalent to the listed impairment. If a child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, the child is presumptively disabled. *See* 20 C.F.R. § 404.1520(d).[1] The DDS determinations dated 12-05-00 and 03-06-01 each conclude that the plaintiff did not have an impairment or combination of impairments meeting the severity described in any listed impairment or the medical or functional equivalent of such severity.

The plaintiff appealed the DDS findings to the Offices of Hearings and Appeals in Jackson, Mississippi, on March 23, 2001. A hearing was conducted on September 20, 2002.

---

[1] Section 1520(d) provides for when one's impairments meet or equal a listed impairment in Appendix 1. If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

## THE ALJ'S DECISION

The ALJ heard testimony from the plaintiff's mother and from the plaintiff herself, establishing that at the time of the hearing the plaintiff was 17 years old, weighed 372 pounds, and suffered from type-II diabetes mellitus. The plaintiff's mother testified that her daughter suffered from headaches and diabetes, and that her obesity was getting worse. The plaintiff testified that she took her medications every day and that her favorite class in school was marketing. No direct evidence of mental retardation either was presented or pursued at the hearing.

The decision of the ALJ was entered on October 11, 2002. The ALJ engaged in a three-step sequential process in evaluating whether the plaintiff was disabled and eligible for SSI benefits: (1) whether the child is doing substantial gainful activity; (2) if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See 20 C.F.R. § 416.924 (b)-(d). Appendix I, Subpart P, Part 404 of the Regulations lists impairments and indicators of medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2005).[2]

The ALJ found that the plaintiff had severe physical impairments of morbid obesity and insulin dependent type II diabetes mellitus under steps one and two. The ALJ concluded, however, pursuant to step three that these impairments did not meet the

---

[2] Sections 12.00 through 12.10 of Appendix 1, Part A and Sections 112.00 through 112.12 Part B cover mental disorders for adults and children.

medically equal in severity requirements for a listed impairment which would support a finding of eligibility for benefits.

Next, the ALJ evaluated the plaintiff's impairments under to Regulation 20 CFR 416.926a(b)(1).[3] This Regulation requires the ALJ to determine whether the plaintiff's development and function are markedly or extremely deficient in any of six areas or "domains." See 20 CFR 416.926a(e)(2) and (3).[4]

---

[3] 20 CFR 416.926a(b)(1) provides that, "[w]e will consider how you function in your activities in terms of six domains. These domains are broad areas of functioning intended to capture all of what a child can or cannot do. In paragraphs (g) through (l), we describe each domain in general terms. For most of the domains, we also provide examples of activities that illustrate the typical functioning of children in different age groups. For all of the domains, we also provide examples of limitations within the domains. However, we recognize that there is a range of development and functioning, and that not all children within an age category are expected to be able to do all of the activities in the examples of typical functioning. We also recognize that limitations of any of the activities in the examples do not necessarily mean that a child has a "marked" or "extreme" limitation, as defined in paragraph (e) of this section. **The domains we use are**:

   (i) Acquiring and using information;
   (ii) Attending and completing tasks;
   (iii) Interacting and relating with others;
   (iv) Moving about and manipulating objects;
   (v) Caring for yourself; and,
   (vi) Health and physical well-being. (emphasis added)

[4] 20 CFR 416.926a(e)(2) provides in part that, "[w]e will find that you have a **"marked" limitation** in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean (emphasis added).

20 CFR 416.926a(e)(3) provides in part that, "[w]e will find that you have an **"extreme" limitation** in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 CFR 416.926a(d) provides in pertinent part as follows: (d) How we will decide that your impairment(s) functionally equals the listings. We will decide that your impairment(s) functionally equals the listings if it is of listing-level severity. Your impairment(s) is of listing-level severity if you have "marked" limitations in two of the domains in paragraph (b)(1) of this section, or an "extreme" limitation in one domain.

Regarding the first domain of acquiring and using information, the ALJ relied on the teacher's report dated November 20, 2000, stating that the plaintiff had a learning disability in math calculation and reasoning, had difficulty learning new material, and was unable to complete assigned tasks in a timely manner. The ALJ also considered the plaintiff's Wechsler Intelligence scores, the testimony of the plaintiff, and the testimony of the plaintiff's mother. Based on this evidence, the ALJ concluded that, while some limitation was present, the limitation was not marked.

On the matter of the plaintiff's ability to attend to and complete tasks, the ALJ noted from the above referenced reports that the plaintiff did not always complete her assigned tasks in a timely manner, but, once again, he concluded that the limitation was less than marked.

The ALJ found that the plaintiff interacted well with others and, based on the school reports and her mother's testimony, the ALJ determined that the plaintiff moved about and manipulated objects with difficulty due to her obesity. Nevertheless, the ALJ concluded that this limitation was not marked.

In the areas of caring for herself and her physical health and well-being, the ALJ concluded that the plaintiff had no marked limitations. The ALJ noted that the plaintiff's diabetes was controlled, that she had no ketoacidosis,[5] that she did not require frequent intervention by a physician and that she had not missed excessive amounts of school. The ALJ relied on the assessments of the DDS experts and the medical evidence

---

[5]Ketoacidosis is a serious condition that can lead to diabetic coma, passing out for a long time, or even death. Ketoacidosis ordinarily occurs in people with type 1 diabetes, and rarely in people with type 2 diabetes. *See* American Diabetes Association information at www.diabetes.org.

reviewed by the DDS physician, and agreed with the DDS conclusions. The ALJ did not make any findings with regard to mental retardation.

## ANALYSIS

### A. The Matter of the POMS

According to the Magistrate Judge, the ALJ's primary error was his failure to make a finding of mental retardation, even though no one had suggested to the ALJ that the plaintiff was mentally retarded. The Magistrate Judge suggests that the requirement to consider the possibility of mental retardation is inherent in Social Security Administration policy. *See* the Program Operations Manual System (POMS). Thus, according to the Magistrate Judge, the inquiry should have been made anyway.

The Magistrate Judge directs attention to POMS § DI 24515.056 which covers the Social Security Administration's guidelines for determining medical equivalence in particular situations. In order to meet Listing 12.05C of Appendix 1, Part A,[6] a claimant must adduce evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function... ." The plaintiff's performance IQ when she was 14 years old was 71, she was obese, and she had type II diabetes with insulin dependency which was controlled. Since the evidence before the ALJ showed that the plaintiff's physical impairments did not limit her functions significantly, and her performance IQ was above the 60-70 required by Listing 12.05C, the ALJ did not conclude that the plaintiff met this Listing. Nevertheless, the Magistrate Judge refers to the POMS § DI 24515.056

---

[6]Regulation 20 CFR 404, Subpart P, Appendix 1, Listing 12.05C provides that one will meet the Listing for mental retardation where one has, "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

which states that, "slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function *may* support an equivalence determination."  POMS § DI 24515 .056(D)(1)(c) (emphasis added).

Courts frequently consider the POMS when interpreting the Social Security Administration's statutory and regulatory policies.  *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004);  *Artz v. Barnhart*, 330 F.3d 170, 176 (3rd Cir. 2003);  *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003).  *See also Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003) (noting that while POMS are not products of formal rule making, they warrant respect in particular circumstances such as where the POMS offer a narrower definition of a term in face of a party's attempt to give the term an overly broad meaning).

POMS guidelines, however, are not binding on the ALJ.  *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (POMS guidelines have no legal force, and do not bind the Commissioner, but may be considered on a case by case basis);  *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000) (same); *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994) (agreeing with the Secretary that the POMS is not binding law because it is an unpublished policy statement).  Section DI 2451.056(D)(1)(c) permits but does not require determination of a 12.05C equivalence by the ALJ for an IQ slightly higher than 60 to 70.   Because the ALJ is not required to consider and is not bound by the POMS, this court shall not impose the POMS upon the ALJ by remanding this decision as recommended by the Magistrate Judge.

## B.  The Matter of Substantial Evidence

This court finds apparent from the record that the DDS reviewers concluded from the medical and psychological evidence that the plaintiff had borderline intellectual functioning.  *See Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999) (borderline intellectual functioning is IQ between 71 and 84).  The ALJ agreed with the DDS review and the evidence the DDS considered.  The ALJ also found that the plaintiff's medical condition was under control with medication.  *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.")  He also noted that the plaintiff was supposed to be following a regimen of 1800 calories per day to control her weight and, hopefully, to begin to reverse her obesity.  Under these evidentiary circumstances, the ALJ concluded that the plaintiff was not eligible for supplemental security income.

This court agrees, finding that the ALJ applied the proper legal standards and that his decision is supported by substantial evidence.  Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995).  Substantial evidence is more than a mere scintilla, but it need not be a preponderance.  *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987).  Upon applying this standard, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Ripley,* 67 F.3d at 555.  If substantial evidence  supports the Commissioner's findings, this court should deem the

findings conclusive, and affirm the decision.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995).

## **CONCLUSION**

Based on the foregoing, this court shall not adopt the Report and Recommendation of the Magistrate Judge and hereby affirms the findings of the Administrative Law Judge for the Office of Hearings and Appeals.  This court shall enter the appropriate judgment.

**SO ORDERED, this the 17th day of February, 2006.**

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:03-cv-127WS
Order